UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Inetta Burns,

        Plaintiff,

v.

Wal-Mart Stores, Inc.,

        Defendant.

Case No. 15-cv-6163

Judge: John W. Darrah

Magistrate Judge: Daniel G. Martin

**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(B) RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS**

Plaintiff Inetta Burns, by and through her attorneys, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 ("L.R. 56.1"), submits her L.R. 56.1(b)(3)(C) Statement of Additional Facts and L.R. 56.1(b)(3)(B) Response to Defendant's Statement of Facts as follows:

**I.**     <u>**PLAINTIFF'S INDEX OF EXHIBITS IN SUPPORT OF HER RULE 56.1(b)(3)(c) STATEMENT OF ADDITIONAL MATERIAL FACTS**</u>

    **EXHIBIT A:** Transcript from the deposition of Inetta Burns dated November 20, 2015;

    **EXHIBIT B:** Resume for Inetta Burns, Bates No. BURNS0000046-49;

    **EXHIBIT C:** Diary of Inetta Burns, Bates No. BURNS0000050-51;

    **EXHIBIT D:** Management Training Program Performance Appraisal for Inetta Burns dated May 13, 2015, Bates No. WAL-MART00709-711 BURNS;

    **EXHIBIT E:** Transcript from the deposition of Lance Buser, dated June 6, 2016;

    **EXHIBIT F:** Transcript from the deposition of J.D. Hacker, dated May 18, 2016;

    **EXHIBIT G:** Transcript from the deposition of Daniel Ketcham, dated July 19, 2016;

    **EXHIBIT H:** Page 21 from the Transcript from the deposition of Gewargis Tammo, dated July 14, 2016;

**EXHIBIT I:** Associate History Profile (HPRO) for Leo Jackson, Bates No. WAL-MART05342-5344 BURNS (filed under seal)[1];

**EXHIBIT J:** Legend and CP Transfer Preferences-hourly for Inetta Burns produced by Defendant in native form at Bates No. WAL-MART000030 BURNS (filed under seal);

**EXHIBIT K:** Associate History Profile (HPRO) for Jesus Valdez, Bates No. WAL-MART07181-7182 BURNS (filed under seal);

**EXHIBIT L:** Excerpts from the Employment History for Douglas Gugudan produced by Defendant in native form, Bates No. WAL-MART05098 (filed under seal);

**EXHIBIT M:** Excerpts from the Employment History for Richard Straton produced by Defendant in native form, Bates No. WAL-MART06702 (filed under seal);

**EXHIBIT N:** Excerpts from the Employment History for William Kendrick produced by Defendant in native form, Bates No. WAL-MART05622 (filed under seal);

**EXHIBIT O:** Interview Comment Sheet for William Kendrick, Bates No. WAL-MART05611 BURNS (filed under seal);

**EXHIBIT P:** Field Management Performance Appraisal for Tim Naumann, Bates No. WAL-MART06241-6242 BURNS (filed under seal);

**EXHIBIT Q:** Management Training Program Performance Appraisal for Gewargis Tammo, Bates No. WAL-MART07016-7018 (filed under seal); and

**EXHIBIT R:** Management Training Program Performance Appraisal for Jesus Valdez, Bates No. WAL-MART07174-7176.

## II. PLAINTIFF'S L.R. 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS[2]

*Burns' Goal to Work in the Glenwood, Illinois Store*

1. Burns holds an associate's degree in Computer Information Systems and is a certified mediator. (Exhibit A (hereinafter "Burns Dep.") at 22:7-17.) Before working at Wal-Mart, she was a manager at K-Mart for 15 years, a shipping and receiving supervisor at NK Parts for five years, a senior sales representative for DirectTV for six years, and a program Coordinator at Jones Memorial Community Center for six years. (Exhibit 3 at 2; Exhibit B at 47.)

---

[1] Citations to documents
[2] All numerically-designated exhibits were filed with Defendant's Motion at Dkt. 36.

2. In approximately 2004, Burns learned Wal-Mart had purchased a property five blocks from her home in Glenwood, Illinois and planned to build a new store at the location. (Exhibit C at 50; DPSOF ¶ 6.)

3. Burns wanted to work in the new Glenwood store and began contacting regional and district managers, including Wal-Mart's District Manager Lance Buser, about her goal. (Exhibit C at 50; Burns Dep. 48:22-49:8, 107:6-13.)

4. Burns interviewed with Buser for an assistant manager position at Wal-Mart and "made it clear, crystal clear to him" that her goal was to work at the Glenwood store. (Burns Dep. 47:21-24; 107:11-14.) Buser told Burns that if she wanted to work in Glenwood, he would ensure it happened. (*Id.* at 67:11-14.)

*The Management-In-Training Program*

5. Wal-Mart's Management-in-Training ("MIT") program lasts for approximately six to eight weeks and consists of on-the-job training and learning about Wal-Mart's policies, procedures, and culture. (Burns Dep. 30:22-31:11.) The classes were held Monday through Friday from 8:00 a.m. to 5:00 p.m. and were led by an instructor. (*Id.* at 33:5-12, 31:19-21.)

6. The MIT program was held at a Wal-Mart store two hours away from Burns' home, and she tolerated the four-hour daily commute, losing a transmission due to all of the miles she drove, having to stay in a hotel in inclement weather, and spending significant money on fuel because she was excited about working in the Glenwood store. (Burns Dep. 108:7-12.)

7. Burns excelled in the MIT program and was complimented on her "positive 'can do' attitude," great work ethic, being a "good people person," and the belief that she "will become a great merchant." (Exhibit D.)

8. Burns became close with approximately five of the trainees in the program, including males Jesus Valdez and Gewargis (George) Tammo. (Burns Dep. 33:20-34:3.)

9. Valdez and Tammo would talk about their pay in front of Burns, which she recalled being more than she earned. (Burns Dep. 100:3-18.) Burns also learned that they had less experience then she did: Tammo did not have any prior retail experience and Valdez did not have any management experience. (*Id.* at 91:15-23; 103:7-15.)

10. Burns sent a letter to Buser on March 14, 2005 to reiterate that her "goal with Wal-Mart is still the same" and reminded Buser that she wanted to be assigned to the Glenwood store as soon as it opened. (Exhibit 5.) Because the store would not be open when she finished the MIT program, Burns proposed that she could temporarily work at the Orland Hills store. (*Id.*)

11. In her MIT review, signed and acknowledged by Buser, her manager Patrick Rheams, and her Sponsor Nicholas Yount, Burns noted her plan to "be a part of the management team at the Glenwood store when they have their Grand Opening and move on up with the company." (Exhibit D at 711.)

3

## *Wal-Mart Reneges on its Promise to Burns*

12.  Burns contacted Buser on May 17, 2005 and reminded him about her "goal to be a part of the new store in Glenwood Illinois when it open [sic]." (Exhibit 7.) Buser told Burns she needed to speak with Chad Doneth, who he believed was the District or Market Manager. (Exhibit E (hereinafter "Buser Dep.") at 14:4-15.)

13.  After trying to call Buser, Burns replied to Buser's email and expressed her hope that he could explain the steps she needed to take to get to the Glenwood store. (Exhibit 7.) She also mentioned she did not want to make any enemies by persisting in holding Buser and other Wal-Mart employees to their promise. (*Id.*; Burns Dep. 66:11-67:14.)

14.  Buser responded that Burns needed to speak with new District Manager J.D. Hacker. (Exhibit 7; Burns Dep. 48:2-4.)

15.  In 2005, Wal-Mart's corporate designee did not believe it had any formal application process. (Exhibit G (hereinafter "Ketcham Dep.") at 20:19-25.) Store Managers were able to pick who they wanted to have in the store and, if an associate did not feel he or she was treated fairly, the request could be brought to the attention of the District Manager. (*Id.* at 21:1-22:3[3].)

16.  Burns contacted Hacker as directed, but Hacker said Burns could not work in the Glenwood store because Wal-Mart maintained a policy whereby new assistant managers could not work in new stores. (Burns Dep. 69:2-5.)

17.  Burns was "devastated" by Hacker's response and called the Regional Manager to check into this alleged policy. (Burns Dep. 107:22-23; Exhibit C.) The Regional Manager told Burns he would speak with Hacker. (Exhibit C.)

18.  Wal-Mart does not maintain a policy that new managers cannot work in new stores. (Buser Dep. 12:3-24.) To the extent there was any *preference* not to put "new" managers in new stores, Wal-Mart would consider management experience at similar retailers. (Ketcham Dep. 33:23-34:2.)

19.  Buser's policy was to place managers where they were most needed, rather than categorically refusing to place new managers in new stores. (Buser Dep. 15:1-16:4.) Hacker also admits there was no such policy, and it was "not unheard of" to place a new manager in a new store. (Exhibit F (hereinafter "Hacker Dep.") at 14:5-19.)

20.  In subsequent calls with Hacker, he told Burns just to accept what happens. (Exhibit C at 50.) Throughout this time, Burns knew there were plenty of openings at the Glenwood store because it was hiring for all open positions. (Burns Dep. 69:22-24.)

---

[3] This page is filed at Exhibit H because it was not included in the excerpts filed with Exhibit 10.

### *Burns Becomes an Assistant Manager*

21.     Rather than sorting the freight and putting it on the shelves at the Mattson store, it had built up in front of the exits to a point that the fire marshal was about to close the store. (Burns Dep. 45:10-15, 108:2-5.) Burns also had a peg board fall on her although she was not injured. (*Id.* at 45:10-15.) Due to the state of the store, she contacted Hacker to request a transfer. (*Id.* at 45:21-22, 47:11-12.)

22.     Burns' was moved to the Bradley-Bourbonnais store. (Burns Dep. 46:3-7.) However, the Store Manager and Co-Manager at the Bradley store treated Burns and the other female assistant manager worse than any of the male managers. For example, the Store Manager would require Burns and the other female to unload the delivery trucks, which required significant lifting, while the males were given easier tasks on the store floor. (*Id.* at 55:6-16.)

23.     Based on the unfair work assignments, and unequal treatment, Burns stepped down as Assistant Manager. (Burns Dep. 70:16-22.)

### *Burns Transfers to Glenwood*

24.     The Glenwood store opened around the time Burns stepped down as Assistant Manager. (Exhibit C at 50.) Burns went to the store to inquire about an Assistant Manager position. (*Id.*) She was hired as a sales associate. (Exhibit 9.)

25.     Burns saw assistant managers from her MIT program working in the Glenwood store, including Tammo. (Burns Dep. 85:13-21.)

26.     The TLE department does not require any special education or experience. (Ketcham Dep. at 17:6-12, 30:3-6.) While the TLE department was referred to as a specialty department, the specialty departments were ultimately all part of the same store. (*Id.* at 18:5-20.) Some Assistant Managers, such as Leo Jackson, would go from Assistant Manager, to TLE Assistant Manager, and back to Assistant Manager within the same store over a matter of months. (Exhibit I at 5343.)

27.     Tammo left Wal-Mart because the commute was too long for what he was being paid. (Exhibit 10 (hereinafter "Tammo Dep.") at 23:21-24:2.)

### *Wal-Mart Refuses to Promote Burns to Support Manager*

28.     In 2009, Burns was interested in a promotion to Support Manager, which would result in higher pay. (Burns Dep. 96:7-17.) Burns took and passed a management assessment through Wal-Mart's Career Preferences computer system, which is one of the requirements for the position. (*Id.* at 96:22-97:2)

29.     In 2009, Burns indicated in the Career Preferences computer system that she wanted to transfer to a Support Manager position. (Burns Dep. 97:7-11; Exhibit J.) She learned a male was hired as Support Manager. (Burns Dep. 98:1-5.)

*Pay Inequity and Unequal Treatment at Wal-Mart*

30.     Burns learned through conversations with other employees that female employees are paid less than males. (Burns Dep. 99:10-18.) She first has those conversations while in the MIT program, and they persist to this day. (*Id.* at 99:23-100:10.)

31.     Tammo, Valdez, and Burns were paid the same salary as Assistant Managers: $▮ every two weeks. (Exhibits 12-13; Exhibit K.) Tammo and Valdez were in the TLE department, which should be a lower-paid position. (Ketcham Dep. 17:6-12.)

32.     Douglas Gugudan was hired directly into Wal-Mart's training program, became an Assistant Manager in the Bradley-Bourbonnais store, and became a Sales Associate in August 2005. (Exhibit L.) However, Gugudan received an hourly rate of $▮/hour upon transitioning to an hourly position—$▮ per hour more than Burns. (*Id.*)

33.     Richard Straton was hired as a Sales Associate at the Glenwood store in August 2005 at the same time as Burns transferred into the store. (Exhibit M.) Straton was paid $▮ per hour, and was given a raise to $▮ per hour within a few months. (*Id.*) Burns had been at Wal-Mart longer, had been an Assistant Manager, and had decades of retail experience, yet was only paid $8.70. (Exhibit 9.)

34.     William Kendrick entered the MIT program three years before Burns, and was paid over $▮ more per hour while in the program, and started as an Assistant Manager at $▮ per pay period compared to Plaintiff's $▮. (Exhibit N.) Hacker interviewed Kendrick, and his notes show he was calculating Kendrick's pay. (Exhibit O)

35.     Wal-Mart granted flexibility to its managers in determining pay, because the managers determined an employee's review score, which in turn determined pay. (Ketcham Dep. 15:3-9, 15:25-16:10.)

36.     Managers also altered scores to ensure a larger raise for select employees: in one instance a male employee's review score was blue-penciled and he was given a ▮% raise, even though raises were supposed to be limited to 5%. (Exhibit P; Ketcham Dep. 37:1-6.) Hacker signed off on this review. (*Id.*)

37.     Wal-Mart received at least 16 complaints of gender discrimination form Burns' districts during her employment. (Ketcham Dep. 46:19-48:25.)

### III.    PLAINTIFF'S L.R. 56.1(b)(3)(B) RESPONSES TO DEFENDANT'S STATEMENT OF MATERIAL FACTS.

1.      Inetta Burns ("Plaintiff") is a female employee of Wal-Mart. Plaintiff is currently a training coordinator at a Wal-Mart store in North Carolina. She began her employment with Wal-Mart on or about January 10, 2005, as an Assistant Manager. Complaint ¶ 14; Burns Dep. 27:18-20, 29:20-22, 25:15-17; WAL-MART02233-34.

**RESPONSE:** Disputed that Plaintiff began her employment with Wal-Mart as an Assistant Manager; Plaintiff began her employment as an Assistant Manager Trainee before becoming an Assistant Manager. (Ketcham Dep. 52:2-8.) Admitted that Plaintiff is a female employee of Wal-Mart, currently a training coordinator at a Wal-Mart store in North Carolina, and that she began her employment with Wal-Mart on or about January 10, 2005.

2. On July 14, 2015, Plaintiff filed a one (1) count Complaint alleging sex discrimination under Title VII of the Civil Rights Act of 1964. Complaint ¶¶ 35-39.

**RESPONSE:** Disputed. Burns filed her Complaint on January 2, 2015 alleging sex discrimination in violation of Title VII. Complaint at ¶ 7. The matter was captioned *Renata Bozek, Inetta Burns, and Theresa Lishamer v. Wal-Mart Stores, Inc.*, Case No. 15-cv-00010, and was assigned to the Honorable Judge John W. Darrah. *Id.* On March 18, 2015, Defendant filed a Motion to Sever or, in the Alternative, to Require Plaintiffs' Claims to be Tried Separately. *Id.* at ¶ 9. Judge Darrah granted Defendant's Motion. *Id.* at ¶ 10. Burns' claims were dismissed without prejudice, and she was given 30 days to file an individual complaint. *Id.* Burns filed her Complaint on July 14, 2015. *See generally* Complaint.

3. Generally, Plaintiff alleges that she was discriminated against on the basis of her sex when: (1) she was not allowed to transfer as an Assistant Manager to a new Wal-Mart store in Glenwood, Illinois; (2) she was paid less than other male Wal-Mart employees; and (3) she was not granted an interview for or the position of Support Manager in 2009. Complaint ¶¶ 35-39.

**RESPONSE:** Disputed. As it relates to pay, Plaintiff admits she alleges she was discriminated against on the basis of sex when she was paid less than other male employees. As it relates to promotion, Plaintiff generally alleges she was discriminated against on the basis of sex when she was not allowed to transfer to Glenwood and a majority of her transfer and promotion requests were refused. *See generally* Complaint.

4. Prior to working at Wal-Mart Plaintiff was a Manager at K-Mart for over ten (10) years. Plaintiff applied for an Assistant Manager position. Complaint ¶ 17; Burns Dep. 102:15-21; WAL-MART02233-34; Ketcham Affidavit ¶¶ 4, 8-11.

**RESPONSE:** Admitted.

5. Plaintiff immediately began the Management in Training ("MIT") program after she was hired by Wal-Mart. Burns Dep. 30:20-21.

**RESPONSE:** Admitted.

6. Wal-Mart was building a new store in Glenwood, Illinois, in 2004 and 2005, when Plaintiff was in the MIT program. Complaint ¶¶ 18-19

**RESPONSE:** Admitted.

7. Generally, the Market Manager or District Manager is the decisionmaker on transfers. Ketcham Dep. 32:5-11.

**RESPONSE:** Disputed. A market manager is "involved" in transfers of salaried employees. (Ketcham Dep. 22:8-23:2.) Store managers are involved in enacting a transfer for an hourly employee. (Ketcham Dep. 34:3-17, 22:8-22.) Defendant has not cited any testimony to support the assertion that the Market Manager or District Manager is "the decisionmaker."

8. On March 14, 2005, Plaintiff sent a request to Lance Buser ("Buser"), the District Manager who hired Plaintiff, asking to be placed at the new Wal-Mart store being built in Glenwood. Buser was not the District Manager over the Glenwood store at the time and, therefore, did not have the authority to place Plaintiff at the Glenwood store. BURNS0000057; Buser Dep. 10:9-12, 14:19-22.

**RESPONSE:** Disputed. Before becoming and Assistant Manager, Plaintiff told Buser it was her goal to work at the Glenwood store. (Burns Dep. 48:22-49:8, 107:6-14.) When she interviewed with Buser for the Assistant Manager position, she again "made it clear, crystal clear to him" that her goal was to work in Glenwood. (*Id.* at 47:21-24, 107:11-14.) Buser told Plaintiff that if she wanted to be in the Glenwood store, he would ensure it happened. (*Id.* at 67:10-14.) He never told Plaintiff he did not have the authority. (*Id.*)
Plaintiff later followed up with Buser on March 14, 2005 to remind him of their previous conversations, and her conversations with other Wal-Mart employees, to reiterate that her goal to work in the Glenwood store was still the same. (Exhibit 5.) This was not the first time Plaintiff requested to be placed in that store. (*Id.*) Plaintiff contacted Buser again on May 17, 2005 for his assistance in getting into the Glenwood store. (Exhibit 7.) Buser told Plaintiff he would contact Chad, the Store Manager. (*Id.*) He later told Plaintiff she needed to speak with her District Manager, J.D. Hacker. (*Id.*)

9. After completing the MIT program, Plaintiff was placed in the Matteson, Illinois, store as an Assistant Manager. Burns Dep. 44:21-45:8.

**RESPONSE:** Admitted.

10. After an accident in the Matteson, Illinois, store, Plaintiff requested a transfer. Plaintiff's transfer request was granted and she moved to the Bradley, Illinois, store. Burns Dep. 45:21-46:4.

**RESPONSE:** Disputed. Plaintiff requested a transfer due to the state of the Mattson store, including freight building up and blocking every exit to a point that the fire marshal was about to close the store and a peg board fell on her. (Burns Dep. 45:10-15; 108:2-5.)

11. District Manager J.D. Hacker ("Hacker") approved Plaintiff's transfer from Matteson to Bradley. Burns Dep. 47:10-20.

**RESPONSE:** Admitted.

8

12. On May 17, 2005, Plaintiff sent an email to Buser asking to be transferred to the Glenwood store. Buser responded the next day and advised Plaintiff to speak with her District Manager, Hacker. BURNS0000042; Buser Dep. 13:17-14:18, 16:5-12.

**RESPONSE:** Denied. Plaintiff called Buser because Wal-Mart had not kept its word that it would allow Plaintiff to work in the Glenwood store, and Plaintiff persisted in holding Wal-Mart to its promise. (Burns Dep. 66:5-17, 67:10-14, 68:16-19.) Before becoming an Assistant Manager, Buser told Plaintiff that if she wanted to be in the Glenwood store, he would ensure it happened. (*Id.* at 67:10-14.) Admit that Buser advised Plaintiff to speak to Hacker in response to her May 17, 2005 email.

13. Plaintiff wanted to move to the Glenwood store in 2005 because it was closer to her home at that time. Complaint ¶ 19-21; Burns Dep. 91:2-5.

**RESPONSE:** Disputed. In addition to being closer to her home, Plaintiff wanted to work at the store because it was within her community. (Burns Dep. 115:10-16.)

14. Wal-Mart does not have a written policy regarding allowing new Assistant Managers to manage new Wal-Mart stores. However, most District Managers prefer to staff new stores with experienced management. Hacker Dep. 13:10-19; Buser Dep. 12:6-14; Ketcham Dep. 33:6-22.

**RESPONSE:** Disputed. Plaintiff admits the first sentence: that Wal-Mart does not have a written policy regarding whether new Assistant Manager may be placed in new stores. The second sentence, regarding what "most" District Managers prefer, is disputed. District Manager Buser's policy was to place managers where they were most needed, rather than categorically refusing to place new managers in new stores. (Buser 15:1-16:4.) Hacker also admits it was "not unheard of" to place a new manager in a new store. (Hacker Dep. 14:5-19.)

15. According to Plaintiff, Hacker told Plaintiff that he would not place her in the Glenwood store because she was a new Assistant Manager, and he preferred to staff new stores with experienced managers. Although Hacker does not remember any conversation with Plaintiff, he testified that generally Wal-Mart did not recommend placing new Assistant Managers in new stores. Burns Dep. 68:23-69:5; Hacker Dep. 13:10-19.

**RESPONSE:** Disputed. Hacker told Plaintiff she could not work in the Glenwood store because Wal-Mart maintained a policy whereby new assistant managers could not work in new stores. (Burns Dep. 69:2-5.) It was not unheard of to place a new manager in a new store. (Hacker Dep. 14:5-19.) Plaintiff admits that Hacker does not recall this conversation with Plaintiff.

16. Wal-Mart preferred to place experienced Assistant Managers in new stores because the dynamics of opening a new store are hard for a new Assistant Manager to balance while learning a new position. It is better for experienced Assistant Managers to teach new Associates in new stores. Hacker Dep. 19:1-6; Buser Dep. 12:8-21.

**RESPONSE:** Disputed. It was not unheard of to place a new manager in a new store. (Hacker Dep. 14:5-19.) To the extent there was any *preference* not to put "new" managers in new stores, Wal-Mart would consider management experience at similar retailers. (Ketcham 33:23-34:2.)

17. Plaintiff was not transferred to the Glenwood store as an Assistant Manager. Plaintiff later stepped down from her position as Assistant Manager and transferred to the Glenwood store as an Associate. Plaintiff began to work as an Associate at the Glenwood store on August 6, 2005. Complaint ¶ 22-23; Burns Dep. 70:9-12; 87:6-88:16; Ketcham Deposition Exhibit 6.

**RESPONSE:** Admitted.

18. Gewargis Tammo ("Tammo") is a former Wal-Mart employee who completed the MIT program with Plaintiff. Tammo previously worked in loss prevention for TJX Corporation, supervising between 10 and 20 employees at Marshalls stores. Complaint ¶ 24; Tammo Dep. 7:15-9:24.

**RESPONSE:** Disputed. Tammo joined TJX in 1999 or 2000, but did not begin supervising employees until he became a loss prevention trainer in 2003 or 2004. (Tammo Dep. 7:18-20, 8:17-24.) He was only in that role until 2005. (*Id.* at 9:11-12.)

19. Sometime in late 2004 or early 2005, Tammo applied for an Assistant Manager position with the Tire and Lube Express ("TLE") department. At the time of his application there were only two (2) TLE locations in the area. Tammo Dep. 10:20-11:12; 20:10-14; 24:5-8.

**RESPONSE:** Disputed. Tammo's MIT review makes no mention of the TLE program (Exhibit Q) unlike Valdez' review which specifically notes Valdez is "Going into TLE." (Exhibit R).

20. The TLE department is a specialized department which provides oil change services and sells tires. The Assistant Managers in the TLE department have a lower level of responsibility than those Assistant Managers in other departments of a Wal-Mart store. The TLE department has a separate supervisor and District Manager than the other Assistant Managers in the stores. Hacker Dep. 16:23-17:12; Tammo Dep. 12:23-13:3; Ketcham Dep. 17:22-19:2.

**RESPONSE:** Disputed. The TLE department does not have any different policies or procedures than the rest of the store. (Buser Dep. 17:18-25.) The department also does not have a different reporting structure: when Buser served as District Manager, he had responsibility over the TLE department. (*Id.* at 17:23-18:4.)
When confronted with Tammo's employment history, Buser claimed he would not have had authority to place Tammo in the Glenwood store because it was not his district—not because the TLE department had a separate reporting structure. (*Id.* 18:5-19:7.) Tammo testified that he reported to Chad, the same person Buser said he would contact when facilitating Plaintiff's transfer. (Tammo Dep. 21:12-15.) Ketcham testified that the TLE department would have a department manager just like any other department and "ultimately, they were all part of the store." (Ketcham Dep. 18:14-19:2.)

21. After Tammo completed the MIT program, he was placed as an Assistant Manager in the TLE located in the Glenwood store. Tammo did not request a transfer to the Glenwood store. Complaint ¶ 24; Tammo Dep. 20:4-19.

**RESPONSE:** Admitted.

22. Neither Hacker nor Buser placed Tammo at the Glenwood store. The District Manager over the TLE stores would have placed Tammo at the Glenwood store. Hacker Dep. 18:8-13; Buser Dep. 19:4:7.

**RESPONSE:** Disputed. Buser testified that Tammo was not in his district, but neither was Burns at this point. (Buser Dep. 19:4-4, Exhibit 7.) Hacker testified that the "Tire & Lube Express district manager" would have been part of the hiring process, however, there was only one TLE location in the entire Chicago area. (Hacker Dep. 18:8-13; Defendant Proposed Statement of Fact ¶ 23.) District boundaries were based on sales and logistics area. (Ketcham Dep. 8:4-9.)

23. Tammo left his position as an Assistant Manager of the TLE department at the Glenwood store seven (7) months after starting his employment because it was too far from his home. He did not request a transfer because there were no other TLE locations in the Chicago area. Tammo Dep. 23:17-24:11.

**RESPONSE:** Admitted.

24. Plaintiff alleges she applied for a Support Manager position in 2009. Plaintiff was not granted an interview for the Support Manager position, nor was she chosen for the Support Manager position. Complaint ¶ 27; Burns Dep. 96:13-97:5-11.

**RESPONSE:** Admitted.

25. Plaintiff "overheard" that the Support Manager position was given to a male employee. Plaintiff cannot name or describe the people she heard talking about the Support Manager position. Plaintiff cannot name or describe the male employee who allegedly received the position in 2009, nor did she verify that the male employee received the position in 2009. Burns Dep. 97:12-99:7.

**RESPONSE:** Admitted.

26. Wal-Mart's internal documents do not reveal that Plaintiff applied for a Support Manager position in 2009. WAL-MART00030; Ketcham Affidavit ¶¶ 5, 8-11.

**RESPONSE:** Disputed. Plaintiff indicated her interest in transferring to the Support Manager and Overnight Support Manager positions in 2009. (Exhibit J.)

27. Wal-Mart's internal documents reveal that Plaintiff applied for a Support Manager position in 2015, and that Support Manager position was filled by a female. WAL-MART00030; Ketcham Affidavit ¶¶ 5, 8-11.

11

**RESPONSE:** Admitted.

28. According to Plaintiff, she was told by male employees in the MIT program over lunch that males were making more money than she was receiving. Complaint ¶ 30; Burns Dep. 101:13-14.

**RESPONSE:** Disputed. During lunch, male employees in the MIT program discussed their pay and Plaintiff knew she was making less. (Burns Dep. 101:4-14.)

29. Plaintiff based her allegation that male MIT employees were making more money than her through "conversation" and did not have any specifics regarding pay. Burns Dep. 100:3-101:9.

**RESPONSE:** Disputed. William Kendrick entered the MIT program three years before Burns, and was paid over $▮ more per hour while in the program, and started as an Assistant Manager at $▮▮▮▮ per pay period compared to Plaintiff's $▮▮▮▮. (Exhibit N.)

30. Tammo did not discuss his pay with Plaintiff at any time. Tammo Dep. 22:12-20.

**RESPONSE:** Denied. Tammo discussed his pay with Burns in 2005 while the two had lunch. (Burns Dep. 101:4-22.)

31. Wal-Mart's internal documents reveal that Plaintiff and Tammo received identical gap pay and salaries. WAL-MART00705; WAL-MART07020 (CONFIDENTIAL DOCUMENT); Ketchum Affidavit ¶¶ 6-11.

**RESPONSE:** Admitted.

32. Plaintiff was unable to identify any specifics regarding any male employee who "advanced more rapidly on the pay scale" during her deposition. Burns Dep. 105:2-22.

**RESPONSE:** Disputed. The employee's performance review rating would determine the percentage raise the employee received. (Ketcham Dep. 15:3-9.) Therefore, employees like Straton would advance more rapidly on the pay scale because he started at a higher wage. (*Id.*; Exhibit M.)

33. Wal-Mart employees, including Assistant Managers, are paid according to Base Pay Guidelines. Ketcham Dep. 13:15-25; 14:16-23.

**RESPONSE:** Disputed. Wal-Mart granted flexibility to its managers in determining pay. (Ketcham Dep. 15:3-9, 15:25-16:10.) Managers had the ability to alter review scores to affect raises for select employees. (Exhibit P; Ketcham Dep. 37:1-6.)

Date: September 22, 2016       **NICHOLS KASTER, PLLP**

<div style="margin-left:2em">

s/Janet M. Olawsky
James H. Kaster* (WI #1001474, MN #53946)
   kaster@nka.com
Matthew H. Morgan* (MN #304657)
   morgan@nka.com
Janet M. Olawsky* (MN #393311)
   jolawsky@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878
*Admitted pro hac vice

**THE PRINZ LAW FIRM, P.C.**
Kristen Prinz (IL #6291900)
   kprinz@prinz-lawfirm.com
Poonam Lakhani (IL #6306318)
   plakhani@prinz-lawfirm.com
One East Wacker
Suite 550
Chicago, Illinois 60601
Telephone: (312) 212-4450
Fax: (312) 284-4822

**ATTORNEYS FOR PLAINTIFF**

</div>

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 22, 2016, she electronically filed the forgoing **Plaintiff's Local Rule 56.1(b)(3)(B) Response to Defendant's Statement of Undisputed Material Facts and Local Rule 56.1(b)(3)(C) Statement of Additional Facts**. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

<div style="text-align: right;">

s/Janet M. Olawsky
Janet Olawsky
NICHOLS KASTER, PLLP

</div>