**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LONNITTA REID, Administrator of the Estate of INETTA BURNS,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 15 C 6163** |
| **WAL-MART STORES, INC.,** | ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Inetta Burns filed suit against her employer, Wal-Mart Stores, Inc., alleging that the company and its employees discriminated against her based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Burns recently passed away, and the administrator of her estate has substituted as the plaintiff in this case. The Court will nonetheless refer to the claims in this case as Burns's claims.

Burns's complaint includes only one count, but it appears to base her claim on three allegedly discriminatory actions or courses of conduct: disparate pay, failure to transfer, and failure to promote. Thus the Court will consider Burns to have made three separate claims. Wal-Mart has moved for summary judgment on all three claims. For the reasons stated below, the Court declines to enter summary judgment in Wal-Mart's favor on Burns's claim of disparate pay but otherwise grants Wal-Mart's motion.

**Background**

Burns lived in Chicago Heights, Illinois during the events relevant to this case.

She had an associate's degree in computer information systems and worked as a manager at K-Mart for 15 years.  In 2004, Burns learned that Wal-Mart was opening a store in Glenwood, Illinois, five blocks from her home in Chicago Heights.  According to Burns, she began contacting managers at Wal-Mart, including district manager Lance Buser, specifically to express interest in a management position at the new store.

Burns was hired directly into Wal-Mart's management in training (MIT) program.  The MIT program lasts between six and eight weeks and provides on-the-job training.  Burns says that while in the program, she become close with other trainees, including Jesus Valdez and Gewargis Tammo.  According to Burns, the two men sometimes talked about their pay in front of her, and she learned that they received a higher salary than she did.  She completed the MIT program and, in January 2005, was officially hired as an assistant manager at the Wal-Mart in Matteson, Illinois.  Following an accident during her first few weeks at work, she was given a transfer to the store in Bradley, Illinois.  During this time, Burns earned $1,230.77 bi-weekly working as an assistant manager.

Around May 2005, Burns reached out to Buser to request a transfer to the store in Glenwood.  Burns states that Buser first told her to contact the person he thought was the current district manager, Chad Doneth.  Buser later informed her that she needed to speak with J.D. Hacker, the new district manager.  Burns contacted Hacker, who told her that she could not work in the Glenwood store because it is against company policy to have new assistant managers work in new stores.  Hacker testified during his deposition in this case that the alleged policy is more of a preference and that it is not unheard of to put new managers in new stores.

Burns continued to work at the Bradley store, where, she alleges, she was treated differently from male managers. Specifically, she states that she and the other female manager were required to unload the delivery trucks, while the male managers were given easier tasks. Burns states that because of this treatment—and the denial of her transfer request—she stepped down as assistant manager. By this time, the Glenwood store had opened, so she applied for the assistant manager position there. Instead, she was hired as a sales associate, a lower level position. When Burns began working at the Glenwood store, she discovered that Tammo was working in the Tire Lube Express (TLE) department of that store as an assistant manager.

According to Burns, in 2009 she applied for a promotion to the position of support manager. She passed an online management assessment through Wal-Mart's Career Preference computer system and then indicated that she was interested in the support manager position. Burns alleges that Wal-Mart instead gave the position to a male employee.

Burns also alleges that, while working at the Glenwood store, she learned that female Wal-Mart employees were consistently paid less than male employees. She says she learned that while working as assistant managers, she, Tammo, and Valdez each earned the same amount ($1,230.77 per pay period), despite the fact that Tammo and Valdez both worked in the TLE department, which provides a lower salary. According to Burns, she was also paid less than similarly situated male employees while working as a sales associate. Douglas Gugudan began at the Glenwood store as a sales associate in 2005 and earned $10 per hour, whereas Burns initially earned $8.75. Richard Straton also worked as a sales associate at the Glenwood store around

3

the same time.  He was allegedly hired at $9.10 per hour and was soon given a raise to

$9.65.  Finally, Burns states that she earned less than William Kendrick, another MIT

trainee and assistant manager.  Kendrick entered the MIT program three years before

Burns and earned $17.75 as a trainee.  Burns earned between $11.10 and $14.43.

After Kendrick left the program, he earned $1,846.15 bi-weekly in his first job as an

assistant manager; Burns earned $1,230.77.  While working as an assistant manager in

the Bradley store in 2004, Kendrick earned $1,884.62 bi-weekly.

In May 2012, Burns filed a charge of discrimination with the EEOC alleging that

Wal-Mart discriminated against her because of her sex.  She received a right to sue

letter in December 2014.  She then filed this suit.

## Discussion

Wal-Mart has moved for summary judgment on Burns's claim of sex

discrimination.  As indicated earlier, Wal-Mart contends that the single count in Burns's

complaint identifies three courses of conduct that Burns alleges were discriminatory:  (1)

the difference in earnings between Burns and other male employees; (2) the denial of

her request to transfer to the Glenwood store: and (3) the denial of her application for

promotion to support manager.  Wal-Mart argues that Burns has failed—in any of these

instances—to point to similarly situated male employees who received more favorable

treatment.  The company also argues that denial of a transfer request does not qualify

as an actionable adverse employment action under Title VII.  Wal-Mart has also moved

to strike facts set out by Burns in her statement of material facts, arguing that she has

not complied with Local Rule 56.1.  In addition, Wal-Mart has moved to strike certain

exhibits that Burns offers in response to its motion, arguing that Burns has not

4

authenticated the exhibits.  The Court considers the latter two motions first.

## I.     Motions to strike facts and exhibits

Wal-Mart firsts asks the Court to strike certain facts asserted by Burns in her response to Wal-Mart's statement of facts and in her own statement of facts.  Wal-Mart argues that a number of Burns's statements violate requirements of Local Rule 56.1 because they are non-responsive, lack citation to admissible evidence, or improperly include additional facts.  District courts have discretion in determining whether to strictly enforce the requirements of Local Rule 56.1.  *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011).  The Court declines to strike any of the facts Burns presents.

Wal-Mart also asks the Court to strike a number of exhibits that Burns has used in opposing Wal-Mart's motion.  The company argues that Burns has not authenticated the documents and therefore that they are inadmissible for consideration on summary judgment.  The fact that these are Wal-Mart records that the company produced in discovery is, for present purposes at least, sufficient to authenticate them.  *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982).  The exhibits that Wal-Mart challenges are documents that it turned over to Burns during discovery.  *See* Decl. of Janet M. Olawsky in Opp'n to Def.'s Mot. for Summ. J., dkt. no. 41 (indicating that the challenged exhibits have Bates numbers beginning with "WAL-MART").  Further, there is a reasonable basis for believing that these documents will ultimately be admissible as business records.  The Court therefore finds that they have been sufficiently authenticated to be relied upon at the summary judgment stage.

## II.    Motion for summary judgment

When reviewing a motion for summary judgment, the Court examines the record

in the light most favorable to the non-moving party and makes all reasonable inferences in her favor. *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Poullard v. McDonald*, 829 F.3d 844, 852 (7th Cir. 2016).

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" based on the individual's sex. 42 U.S.C. § 2000e-2(a)(1). Generally, a plaintiff must show that "(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer's legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *See Davis v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Wal-Mart presents its arguments on summary judgment using the framework previously employed by the Seventh Circuit to evaluate discrimination claims, which distinguished between direct evidence and indirect evidence. Recently, however, the Seventh Circuit has indicated that district courts are "to stop separating direct from indirect evidence and proceeding as if they were subject to different legal standards." *See id.* at 224 (internal quotations omitted) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The test is simply whether the evidence—taken as a whole— "would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused the discharge or other adverse employment action." *Davis*, 846 F.3d at 224. This test

6

permits, but does not require, use of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as a means of organizing and assessing circumstantial evidence. *Davis*, 846 F.3d at 224.

### A. Disparate pay

Burns first claims that Wal-Mart discriminated against her by repeatedly paying her a lower salary than her male counterparts. She points to five employees—Tammo, Valdez, Gugudan, Kendrick, and Straton—each of whom allegedly earned more money while working in the same position as Burns. Wal-Mart concedes that Burns is a member of a protected class and that she met the company's legitimate job expectations. Def.'s Mem. in Supp. of Mot. for Summ. J. at 6. The company argues, however, that she was not paid less than any similarly situated male employees. It contends that none of the male employees Burns references in her response is a suitable comparator for a disparate pay claim. The company further argues that Burns should be precluded from bringing a claim based on these comparators because she failed to identify them in her complaint.

Burns's failure to identify specific employees as comparators in her complaint does not preclude her from later identifying them as comparators in response to a motion for summary judgment. Wal-Mart cites no persuasive authority, and the Court is aware of none, that imposes this onerous a pleading requirement in an employment discrimination case. Nor does the Court see a basis to preclude Burns from making this argument on the ground that he did not identify these employees in her Rule 26(a)(1) disclosure, which are likewise made early on in litigation, prior to discovery. A contrary rule would doom many, if not most employment discrimination cases based on

7

comparative evidence, as it is unusual for a plaintiff to have any ability to identify by name similarly situated members of a non-protected class until conducting discovery.[1]

### 1. Tammo and Valdez

Burns first points to Tammo and Valdez, two male employees who worked as TLE assistant managers and received the same salary that Burns received as a store assistant manager. Burns argues that TLE assistant managers (who supervise only a particular department, not the entire store) are supposed to earn a lower salary than store-wide assistant managers and therefore the fact that all three employees earned the same salary reflects disparate treatment.

Wal-Mart first argues that Burns is not similarly situated to Tammo and Valdez because they did not share a supervisor and thus different individuals determined their salaries. The Seventh Circuit has indicated that employees with different "decision-making personnel" may not be similarly situated, as this raises the possibility that the difference in the decision-maker—and not discrimination—explains any disparate treatment. *Cox v. Bhd. of Locomotive Eng'rs & Trainmen*, 579 F. App'x 505, 508 (7th Cir. 2014). Burns concedes in her statement of facts that Wal-Mart gives store managers discretion in determining employee pay. Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (SUMF) & Statement of Additional Facts (SAF) ¶ 35. Store managers rate employees based on their performance and use this score to determine pay based on a company scale. *Id.* Though Burns, Tammo, and Valdez were receiving

---

[1] In addition, Rule 26(a)(1) requires disclosure of persons with information that a party may use to support its claims. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). There is no requirement that a plaintiff in an employment discrimination case use the alleged comparator as a witness; the evidence of comparability may come from other sources.

the same salary for allegedly unequal work, Burns worked at the store in Bradley, Illinois, whereas the two men worked at the store in Glenwood, Illinois. Burns has not offered any evidence that the same person determined the salaries of all three. In fact, the evidence indicates the opposite. Because Burns worked at a different store from Tammo and Valdez, she would have had a different manager determine her pay. The Court concludes that no reasonable jury could find Tammo and Valdez to be suitable comparators for Burns's claim of disparate pay.

### 2. Gugudan

Burns also identifies Gugudan, a male employee who worked as a sales associate at the Glenwood store during the same time period as Burns. Burns alleges that Wal-Mart paid him $1.30 more per hour than she was paid for the same job. Wal-Mart again argues that Gugudan and Burns are not similarly situated, this time pointing to the fact that Gugudan had five more years of experience at Wal-Mart than Burns.

The fact that two employees share a job title is insufficient by itself to support an inference that they are suitable comparators. *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 810 (7th Cir. 2014). Typically there must also be evidence that the employees "were subject to the same standards and compensation scheme, or had comparable experience, education, or qualifications." *Id.* Gugudan's employment records reflect that he began working for Wal-Mart as a sales associate in 2000, five years before Burns began the MIT training program. *See* Pl.'s Resp. to Def.'s SUMF & SAF, Ex. L (Gugudan Records). Further, Daniel Ketcham, a Wal-Mart district manager, testified during his deposition that hourly employees receive annual pay increases based on their performance reviews. Pl.'s Resp. to Def.'s SUMF & SAF, Ex. F (Ketcham Dep.) at

9

14:24–15:9.  This testimony is uncontradicted.  Thus Gugudan's salary around August

2005—the time when Burns began working as a sales associate—likely reflected five

years of annual pay increases.  Burns only began working at Wal-Mart in January of

2005 and thus had not yet received any reviews or salary increases.  No reasonable

factfinder could conclude that Burns and Gugudan were similarly situated for the

purposes of Burns's pay discrimination claim.

### 3.  Kendrick

Burns next identifies as a comparator Kendrick, a male employee who went

through the MIT program three years before her and became an assistant manager.

Employment records show that Kendrick and Burns both worked as assistant managers

at Wal-Mart store number 1497 around June 2005.  *See id.*, Ex. N (Kendrick Records);

Def.'s Statement of Material Facts (SOMF), Ex. 9 (Burns Records).  At the time,

Kendrick earned $1,884.62 bi-weekly, and Burns earned $1,230.77.  *See* Kendrick

Records; Burns Records.  But again, the evidence shows that Burns and Kendrick did

not have comparable levels of experience.  Kendrick began Wal-Mart's MIT training

program in March 2002 and held at least one other assistant manager position before

moving to store number 1497.  Kendrick Records.  Therefore Kendrick had almost two

more years of experience working as an assistant manager than Burns did at the time

that they worked at the same store.  As with Gugudan, Kendrick worked at Wal-Mart

long enough to receive annual pay increases before Burns began as an assistant

manager.  No reasonable factfinder could conclude that the two were similarly situated

for purposes of a disparate pay claim.

Burns next argues that she received less pay than Kendrick when they each first

10

left the MIT program, even though neither had any prior experience as an assistant manager. At Kendrick's first assistant manager job out of the trainee program, he earned $1,846.15 bi-weekly working at store number 1256. *See* Kendrick Records. At Burns's first assistant manager position, she earned $1,230.77 bi-weekly working at store number 1497. *See* Burns Records. Thus Burns did receive a significantly lower salary than Kendrick at a time when experience alone cannot explain the difference. The problem, again, is that Burns has conceded that Wal-Mart gives store managers discretion in determining employee pay. Pl.'s Resp. to Def.'s SUMF & SAF ¶ 35. Kendrick and Burns began working as assistant managers at different stores, and Burns has offered no evidence that the same managers determined their pay or that assistant managers are paid pursuant to any sort of standardized pay schedule. As discussed above, these factors indicate that the two employees are not suitable comparators, because there is not a basis for a reasonable inference that the pay discrepancy is the result of discriminatory intent. *Cox*, 579 F. App'x at 508. No reasonable factfinder could conclude that Kendrick and Burns were similarly situated during their first assistant manager positions for the purposes of Burns's disparate pay claim.

Finally, Burns contends that Kendrick earned more money while in the MIT program. Kendrick earned $17.75 per hour as a trainee, while Burns earned between $11.10 and $14.43. Kendrick Records; Burns Records. Wal-Mart again argues that Burns has not presented any evidence suggesting that the same individual determined their pay while in the program. *See* Def.'s Reply Mem. in Supp. of its Mot. for Summ. J. at 4. But Ketcham testified during his deposition that the company provides guidelines for hourly pay rates and does not permit managers to exercise discretion in determining

11

hourly pay. Ketcham Dep. at 13:18–25. Wal-Mart has not presented any evidence suggesting that the hourly salaries that Kendrick and Burns earned while in the MIT program were determined at the discretion of a particular manager. Thus the fact that Burns has not shown that the same employee determined their hourly MIT pay is beside the point. A reasonable factfinder could conclude that Kendrick and Burns were similarly situated while working in the MIT program.

Wal-Mart argues that even if Burns and Kendrick were similarly situated, the company has provided a legitimate, non-discriminatory reason for the difference in their pay. Def.'s Reply Mem. in Supp. of its Mot. for Summ. J. at 6. The company states that a different decision-maker determined Kendrick's pay and that Kendrick had more experience working at Wal-Mart. In determining whether a reason is pretextual, the court must determine "whether the employer honestly believed the reasons it has offered to explain the discharge." *Coleman*, 667 F.3d at 852. The plaintiff must identify weaknesses or inconsistencies in the employer's asserted reason such "that a reasonable person could find it unworthy of credence." *Id.*

Burns has met this standard. Because Ketcham testified that the company sets specific guidelines for the wages of hourly employees—and the employment records indicate that Burns and Kendrick were paid as hourly employees during the MIT program—the fact that a different person may have determined their pay is beside the point. A reasonable jury could also find that the explanation based on Kendrick's experience is not credible. Kendrick's employment records show that his position in the MIT training program was his first job with Wal-Mart. The same is true for Burns. Thus, both Kendrick and Burns entered the MIT program without any prior experience at Wal-

Mart, and yet Kendrick received at least three dollars more per hour. Burns has therefore provided evidence from which a reasonable factfinder could conclude that Wal-Mart's proffered reasons for the difference in pay are pretextual.

### 4. Straton

Finally, Burns relies on a comparison of her pay with that of Straton, another sales associate at the Glenwood store. Straton's employment records show that he became a sales associate in 2005—around the same time as Burns—at an hourly rate of $9.10. Pl.'s Resp. to Def.'s SUMF & SAF, Ex. M (Straton Records). Almost immediately, Wal-Mart increased his pay to $9.65 per hour. *Id.* Burns began in the same position earning $8.70. Burns Records.

Wal-Mart argues that two different managers hired Straton and Burns, meaning that different decision-makers determined their pay rates. But as noted above, Ketcham testified that the company provides guidelines for hourly pay rates for sales associates and does not permit managers to exercise discretion in this area. Ketcham Dep. at 13:18–25. Therefore the fact that different managers hired Burns and Straton is beside the point, given that any manager should have hired them at the same rate of pay.

Wal-Mart also argues that Burns has failed to present evidence that she and Straton had a similar level of relevant experience. But again, Ketcham testified only that hourly pay rates are based on "the position the associate was applying for," *id.* at 13:19–20; he did not indicate that the company takes any other factors into consideration. Thus whether Straton had more retail experience than Burns does not bear on whether the two received disparate pay. A reasonable factfinder could conclude that the two are similarly situated for purposes of Burns's disparate pay claim.

13

5.    **Conclusion**

For reasons described above, the Court denies Wal-Mart's motion for summary judgment on Burns's claim of discrimination based on disparate pay but limits the claim as described in this section

B.    **Denial of transfer request**

Burns also claims that Wal-Mart discriminated against her when it denied her request for a transfer to the Glenwood store. Wal-Mart argues first that the denial of a transfer request does not qualify as an adverse employment action for purposes of a discrimination claim. The company also argues that Tammo—Burns's proposed comparator—is not similarly situated and therefore cannot provide the basis for a discrimination claim.

It is not clear whether the denial of Burns's transfer request constitutes an adverse employment action. The Seventh Circuit has indicated that a denial of a transfer request may qualify if "the transfer would have resulted in higher pay or benefits." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). The court went on to suggest that "mere denial of a lateral transfer" to a position offering "parallel pay, benefits, and responsibilities" would not constitute an adverse employment action. *Id.* But Burns has indicated that she requested the transfer because the Glenwood store was closer to her home and that a transfer would therefore make it significantly easier to get back and forth to work. *See* Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 2, 12 n.2. If a plaintiff could show that her employer routinely granted transfer requests to other employees wishing to relocate closer to home, but that she herself was forced to work at a location much farther away due to

15

her gender, the Court is inclined to believe that this could give rise to a claim under Title VII. But the Court need not resolve that issue here, because it concludes that no reasonable jury could find Tammo to be similarly situated to Burns for purposes of this claim.

Burns argues that Tammo is similarly situated because they both completed the MIT program at the same time, and yet Tammo was able to work at the Glenwood location, whereas Burns was told that new managers could not work there because it was a new store. But Burns has again failed to offer evidence from which a reasonable factfinder could find that she and Tammo were similarly situated. Burns submitted her transfer request to Hacker, who ultimately told her that Wal-Mart had a policy against placing new managers in new stores. Pl.'s Resp. to Def.'s SUMF & SAF, Ex. A (Burns Dep.) at 68:16–69:5. Tammo, on the other hand, was assigned to the Glenwood store immediately after the MIT program. Burns has not provided any evidence that Hacker is the one who placed Tammo in the store. Therefore the two are not suitable comparators. The purpose of the similarly situated inquiry is "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable"—here, sex. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 449, 505 (7th Cir. 2014). If the same individual placed Tammo in the Glenwood store and denied Burns's request, this would eliminate the variability in decision-making personnel and isolate sex as the cause of the differential treatment. But two different individuals made these decisions.

There is another confounding variable. Wal-Mart has provided evidence, which is uncontradicted by Burns, that a TLE assistant manager, such as Tammo, has

significantly less responsibility than an assistant manager, such as Burns. Specifically, assistant managers have authority over the entire store, whereas TLE assistant managers only have authority over the TLE department. *See* Hacker Dep. at 16:23–17:12.

For these reasons, no reasonable factfinder could infer that she and Tammo are comparable and thus that the denial of Burns's transfer request was due to her sex. For this reason, the Court therefore grants summary judgment in favor of Wal-Mart on Burns's claim based on a failure to transfer.

### C.    Failure to promote

Burns's final contention is that Wal-Mart discriminated against her in 2009 when it denied her a promotion to the position of support manager and instead gave the position to a male candidate. Wal-Mart argues that no reasonable jury could find that Burns actually applied for the support manager position and that she has failed to identify the male employee who allegedly received the promotion.

Burns has provided evidence from which a reasonable factfinder could conclude that she applied for the position. She provides records of her activities in Wal-Mart's Career Preferences system. *See* Pl.'s Resp. to Def.'s SUMF & SAF, Ex. J. These records appear to indicate that in 2009 Burns repeatedly submitted requests for support manager positions at different locations. *See id.* All of these requests were eventually marked as "Closed – Associate transferred [sic]." *Id.* These records are sufficient to support a reasonable inference that Burns applied for the support manager system using Wal-Mart's internal system.

But Burns has not provided anything beyond her own vague testimony to support

17

her allegation that Wal-Mart promoted a male employee over her.  She has not identified the name of any male individual that she believes Wal-Mart hired as a support manager during this time period.  Her only evidence is her own testimony that she overheard other employees say that a male was promoted to support manager.  *See* Burns Dep. at 97:12–99:6.  That testimony, however, would be inadmissible hearsay. Without more, Burns cannot show that Wal-Mart promoted a similarly situated male employee to support manager.  She cannot sustain a claim for discrimination on this basis.  *See Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012) ("The 'similarly-situated' inquiry is a 'flexible, common-sense one,' but it at least requires that the plaintiff name a comparator outside her protected class." (internal citation omitted)).  The Court therefore grants summary judgment in favor of Wal-Mart on Burns's claim of discrimination based on a failure to promote her to support manager.

### D.    Discriminatory treatment

Burns also appears to allege in her complaint that, while working as an assistant manager, she was subject to harassment and discriminatory treatment by her store manager and co-manager.  Compl. ¶ 22.  She mentions the incident again in her statement of facts submitted in response to Wal-Mart's summary judgment motion, stating that she and the other female employee were repeatedly required to unload the delivery trucks while male employees were given easier tasks on the floor.  Pl.'s Resp. to Def.'s SUMF & SAF ¶ 22.  But neither Burns nor Wal-Mart makes any reference to these allegations in their respective summary judgment memoranda.

Assuming Burns is asserting a claim along these lines, she has failed to provide sufficient evidence to support the claim.  She has not identified the store manager or co-

manager who allegedly assigned harder tasks to the female employees. Nor has she identified the male employees who received the easier assignments. Without this information, no reasonable factfinder could conclude that the allegedly disparate work assignments were the result of unlawful discrimination.

## Conclusion

For the foregoing reasons, the Court denies Wal-Mart's motion for summary judgment [dkt. no. 34] only on Burns's claim that she received lower pay while working as an associate and while in the MIT program due to her gender. The Court otherwise grants Wal-Mart's motion for summary judgment. The case is set for a status hearing on April 13, 2017 at 9:30 a.m. to discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 7, 2017